On the Merits-‘-Statement of the Case.
MONROE, C. J.
The record in this case discloses the following facts, to wit: On August 25, 1913, Marie Serres, wife of Louis Bordes, presented to the district court a petition in which she alleges the death of Jean Serres, leaving an estate and debts, further alleges that he was her father, and that she is his sole heir, and that an inventory and administration of the estate are necessary, upon which petition the court made an order for an inventory and directed that due notice of the application for administration be published. On the following day John B. Hall presented to the court a. petition, with a nuncupative will, by public act, whereby the decedent bequeaths to said Marie Serres Bordes (calling her his daughter) “all that the law requires,” leaves the balance of his estate “of all kind ¿nd nature,” to her and to Catherine Dautch, wife of Pierre Bordes, “share and share alike,” appoints said Hall his executor, with seisin from the moment of his death, and without bond, and names Charles I. Denechaud as the attorney whom he desires to settle his succession, upon which petition the court made an order that the will be registered and.executed, that an inventory be made, and that Hall be confirmed as executor, upon taking the required oath. Three days later (August 29th) Marie Serres Bordos filed another petition, in which she alleges that the allegation of her first petition that there were debts due by the estate was made in error; that she has discovered that' there are no debts, save that due for the funeral; that the qualification of an executor would therefore be inoperative ; that she is the sole heir at law and forced heir; and that she desires to accept the succession unconditionally, and pay the .debts, or give bond for the same, wherefore she opposes the “qualification” of John B. Hall as testamentary executor. On September 3d following, Deibel, notary, filed an inventory, made under the order first obtained. On the following day Marie Serres Bordes filed a third petition, in which she again alleges that the succession owes no debts, “except the funeral bill and a few small debts, which would be less than one-seventh of an executor’s commission,” and all of which she is willing to pay or furnish bond for. if required, and hence that an administration is unnecessary; that she is the sole forced heir of the decedent; and that:
“By virtue of the last will, * * * petitioner was given the remaining one-half of two-thirds of this estate, and Mrs. Catherine Dautch * * • Bordes has been made an instituted heir * * * to the extent of one-half of two-thirds. * * * That she desires to accept the succession * * * unconditionally, recognizing the right of Mrs. Catherine Dautch * * * Bordes as an instituted heir * * * to the extent of an undivided one-third, in accordance with the terms of the last will. * * * Wherefore * * * petitioner prays that she be recognized as the forced heir of * * * Jean Serres, and, as such, entitled to one-third of his estate, and that, by virtue of the last will of the deceased, herein filed, * * * entitled to one- *1010 half of the remaining two-thirds, and also recognizing the right of Mrs. Catherine Dautch * * * Bordes to inherit under that will * _ * the remaining one-half of two-thirds. Petitioner further prays that she be * *_ * sent into possession, * * * with recognition of the right * * * of Mrs. Catherine Dautch' * * * Bordes. * * * ”
And there was judgment ex parte, as prayed for, of date September 4, 1913.
She then (on September feth) brought an action for the partition of the estate, in which she caused to be cited Mrs. Catherine Dautch Bordes and Mrs. Barbara Cook Serres, the last mentioned of whom appears as the widow, by second marriage, of Jean Serres, and is mentioned in the will as having disappeared many years ago, to which action (at a later period) Mrs. Catherine Dautch Bordes excepted, on the ground of prematurity, and Mrs. Barbara Cook Serres answered, setting up an interest, as widow in community, in certain of the property included in the inventory. In the meanwhile (on September 9th) John B. Hall filed an inventory, taken by Rossi, notary, and with it filed an oath of office, as executor, taken before the same notary, on August 28th, and asked that the inventory be homologated and that letters testamentary be issued to him, which requests being denied, he made an application to this court, as the result of which the judge of the district court, made respondent, was directed to “proceed to cause to be fixed for trial and to try and dispose of the opposition to the qualifying of the executor.” Succession of Serres, 133 La. 929, 63 South. 409. On the day following the rendition of that judgment (October 21st), Mrs. Catherine Dautch Bordes filed a petition in the succession proceeding, setting forth the various steps that had been taken, and alleging that Mrs. Marie Serres Bordes is not an heir of Jean Serres, but is his illegitimate and unlegitimated child; that he was not required by law to leave her any part of his estate; that she therefore takes nothing by the bequest “all that the law requires”; that the entire estate passes, under the universal legacy, to said Mrs. Marie Serres Bordes and petitioner, “share and share alike”; and that the judgment obtained by Mrs. Marie Serres Bordes on September 4, 1913, is void and should be so decreed, to which petition Mrs. Marie Serres Bordes excepted on the ground that it discloses no cause of action. Hall then (on October 26, 1913) moved the court that the opposition of Mrs. Marie Serres Bordes be set down for trial, and it was so ordered; and thereafter Mrs. Barbara Cook Serres filed an opposition to the confirmation of Hall, upon the grounds that there were no debts to pay and no legacies to be delivered by the executor, and that the applicant had exercised an undue influence over the decedent in that in 1906 he had induced him to transfer to his (the applicant’s) daughter two lots of ground, without consideration. The oppositions and the exception of no cause of action filed by Mrs. Marie Serres Bordes to the action brought by Mrs. Catherine Dautch Bordes were tried upon the same day and upon the oppositions there was testimony to the following effect, to wit: That, at the date of the trial (December 6, 1913), the state and city taxes for the year, upon the succession property, had not been paid, and that there was a bill of $5 due a barber for shaving the decedent; that, after filing her opposition, Mrs.. Marie Serres Bordes had paid funeral expenses, $317, church, $75, physician, $8; that she had made no inquiry, and had caused none to be made as to the existence vel non of other debts; that decedent had lived with Mrs. Catherine Dautch Bordes. To which it may be added that the inventories show $55,000 or $60,000 worth of real estate, and about $7,000 in cash, and it does not appear that any one is, at this time, collecting rents, paying taxes, or otherwise administering the property. The court excluded *1012 some testimony that was offered in support of the allegation of Mrs. Barbara Cook Serres (to the effect that the applicant for confirmation had. exercised undue influence over the decedent); the ground of exclusion being that the inquiry just then related to the necessity for an administration, and not the qualifications of the applicant There was judgment in favor of the opponents upon the other ground relied on, and Hall has appealed. There was also judgment in favor of Mrs. Marie Serres Bordes, sustaining her exception, of no cause of action, to the suit brought by Mrs. Catherine Dautch Bordes, from which the latter appealed, and that judgment was reversed by this court in June last, and the matter is now pending on application for rehearing. The matter here to be considered is presented by the appeal of John B. Hall, applicant for confirmation as executor.
Opinion.
[2, 3] The ruling of which the appellant complains, that there having been no debts to be paid, and no legacies to be delivered, the confirmation of the executor, appointed by the testator, would be inoperative, appears to rest upon the decisions in Succession of Dupuy, 4 La. Ann. 570, and Succession of Walker, 32 La. Ann. 321; but, as the Succession of Story, 3 La. Ann. 502, is cited as an authority in the Walker Case, we shall briefly refer to that case, also, in our present review of the questions at issue.
In. Succession of Story, it was held (quoting from syllabus) that:
“Where a succession, which owes no debts, consists of property susceptible of immediate division, and all the heirs are present, and one of the heirs of age and the tutrix of the minor heirs oppose the appointment of any administrator, insisting on an immediate partition, and the appointment of an administrator will only produce unnecessary expense and delay, no such appointment should be made. * * *
“Per Curiam. Even in case there are no debts, we do not undertake to say that an administrator cannot be appointed. There may be cases in which such an appointment would be advantageous, nay necessary, to the interest of a succession; and the propriety of subjecting the succession to such a charge must rest with the discretion of the judge, on the facts before him.”
In Succession of Dupuy, where it appeared that the decedent had left a will, bequeathing his entire estate to his brother and naming an executor, with seisin, and it was admitted that the succession was free of debt, it was held that the appointment of the executor was “inoperative.” The court said (inter alia);
“The appointment of an executor with seisin is not, as alleged, a substantive testamentary disposition, independent of any other. The functions of a testamentary executor are a mandate, differing from other mandates in this oply: That it begins at the death of the principal, when all other mandates end. That mandate, under our laws, where it is not enlarged by the will, is limited to the execution of the legacies contained in the will and to the payment of the debts, and the powers which it gives are to be strictly construed. * * * There being no testamentary dispositions to execute and no debts to pay, * * * the appointment of the defendant as executor has become inoperative. It is well settled that the seisin of the executor is a fiction of law which does not interfere with the legal possession of_ the heir, and also, that the admission of a will to probate and the order given for its execution are only preliminary proceedings necessary for the administration of the estate, and do not amount to a judgment binding on those who are not parties thereto.”
In Succession of Walker, where a second husband applied for confirmation as testamentary executor of the will of his deceased wife, whose sole heir and universal legatee was a minor child by a previous marriage, and the application was opposed by a maternal uncle of the minor, on the ground that there were neither debts nor legacies to be paid, and that an administration was unnecessary, it was held that the executor should not have been confirmed by the probate court.
We shall enter into no extended discussion of the ruling in the Succession of Story, since the power to appoint an administrator *1014 is vested by law in the courts, and the construction which, in that case, was placed upon the law, has long been accepted and fixed in our jurisprudence, and has -little or no bearing upon the question of the right of a testator to appoint his executor and of the obligation of a court to conñvm his appointment. It will be noted, however, that though, in the particular case before it, the court held that the appointment of an administrator was unnecessary, it was careful to say that, even though there be no debts, there may be cases in which such appointments would be “advantageous, nay necessary,” and that the matter rests within ihe discretion of the judge, upon the facts before him. The Successions of Dupuy and of Walker are, then, the only cases, decided by this court, that we have been able to find, in which is has been held, that a testator’s appointment of his executor will be set aside, because, in the opinion o£ an heir (who may have no rights in or to the estate, save under the will) and of the courts, the services of the executor are not needed. Both the Story and the Dupuy Cases are cited as authority in the Walker Case, but the Story Case is not cited in the Dupuy Case, though Justice Rost, by whom that case was decided, was a member of the court when, only one year before, the Story Case was decided, and it is not likely that it would have been overlooked if it had been regarded as establishing a precedent for the decision which followed within so short a period.
The provisions of our law which authorize a person to dispose of his or her estate by last will, or (where there are forced heirs) of a certain proportion of it, and, in the excepted case, restrict such disposition to the proportion prescribed, are no more explicit and of no greater force than, and take no precedence over, the other provisions of the same law which authorize and give effect to other dispositions or. provisions of the will and prescribe the manner and form of its making. The testator in this case, in the manner and form prescribed, declared:
“I give to my daughter, Marie, * * * all that the law requires, and, the balance of my estate, * * * I give and bequeath, share and share alike, to my daughter, Marie, * * * and Catherine Dautch * * * Bordes. I appoint John B. Hall, executor of this my last will * * * and give him seisin of my estate from the moment of my death. * * * I appoint Charles I. Denechaud, attorney at law, to attend to all the legal affairs of the succession.”
And he took that action upon the law’s assurance that, if, after his death, the person named by him as executor should choose to accept the mandate so conferred upon him, it (the law) would clothe such person with the necessary authority in the premises, would vest in him the legal possession of the estate, to be by him distributed and delivered, as directed by the will, or as the law itself requires, would allow him, as compensation for his services, a certain commission upon the appraised value of the. estate, and would allow a fee to be paid by the estate to the attorney to be employed to aid him in the discharge of his duties. In other words, the law confers upon a living man the power so to control his estate after his death as to prescribe the channel through which it shall reach its ultimate destination, and to that end to vest the seisin and administration in another, who may be willing to accept the trust; and no matter what may be the rights of the heirs, with respect to the taking of such seisin from him to whom it is thus given, the owner and testator may at least require that they shall so take it, just as he may require that his creditors shall receive payment of their debts from the person named by him. And nothing could be more reasonable, for, if one be permitted, by last will, so far to control his estate after his *1016 death as to determine who shall be the owner of it, some provision for the execution of the will must follow, as a necessary consequence, and the law has provided that it shall be executed by the person named by the maker, or, if he fail to name an executor, by a dative testamentary executor, to be appointed by the judge. Thus we find in the Civil Code and Code of Practice the following, among other, provisions:
Article 1644, C. C.: “No testament can have effect, unless it has been presented to the judge; * * * the judge shall order the execution of the testament. * * * ”
Article 1646: “When the decease of the testator has been sufficiently proved to the judge_ to whom the testament is presented, he shall immediately proceed to open it, if it he sealed, and to the proof of it. * * * ”
Article 1647: “Nuncupative testaments, received by public acts do not require to be proved, that their execution may be ordered. * * * ”
Article 1657: “When the judge has complied with all the formalities required for opening and proving a testament, he shall order its execution. * * * ”
Article 1658: “The execution of the dispositions, contained in testaments is usually confided by the testators to one or more testamentary executors.”
Article 1678: “If the testator has omitted to name a testamentary executor, or if the one named refuses to accept, the judge shall appoint one ex officio.”
Article 928, C. P.: “When a testator is dead, his testamentary executor or any other person who may feel an interest in having his will executed, shall present a petition for that purpose to the judge of probate. * * * ”
Article 931: “If it be the executor appointed by the will who presents the petition, he-shall demand not only the execution and registry of the will, but that letters testamentary be delivered to him_, if he agrees to accept the appointment; and if he fail to pray for such letters testamentary, he shall be presumed to have declined the trust.”
Act No. 74 of 1877, § 3 (Ex. Sess. p. 111), provides:
“That in all testate successions in the parish of Orleans where from any cause the executor cannot discharge the duties of his office the judge shall appoint the public administrator of the parish dative testamentary executor, when there is no surviving husband or wife or heir present or represented in the state who is qualified to assume and who claims the right to assume the duties of the said office.”
In State v. Judge, etc., 4 Rob. 42, it was said by this court:
“The executors appointed by the testator, or, in case of their failure to act, a dative testamentary executor, are the only persons competent to carry the provisions of a will into effect.”
In Succession of Nicholson, 5 La. Ann. 358, it was said:
“Where the testamentary executor was absent and his address unknown at the opening of the succession, it was the duty of the court to appoint a dative testamentary executor.”
In Succession of Bowman, 28 La. Ann. 611, it was held that the executor named by the testator was entitled to the office in preference to the public administrator. In Succession of Macias, 31 La. Ann. 127, Succession of Strauss, 38 La. Ann. 55, and several other cases, it was held .that the testators could vest the seisin and administration of their entire estates in the executors appointed by them, to be held for the account and benefit, until majority, of minor heirs, to whom portions of the estates were reserved by law; and, whilst that doctrine has since been declared unsound (Succession of McCan, 48 La. Ann. 145, 19 South. 220), the authority of a testator to vest such seisin and administration in the executor named by him, for the term fixed by law, or until, upon the demand of the heir and upon his complying with the conditions imposed upon him by law, he (the executor) may be required to surrender the same, has never been questioned, The doctrine in other jurisdictions upon the question of the right of a testator to appoint, and of the obligation of the courts to confirm, an executor is thus stated, with abundant citation of authority, to wit:
“Where a will is proved, it is the duty of the court to issue letters testamentary to the person named as executor, upon his application, unless he is, for some reason, incompetent. * * * All persons, generally speaking, who are capable of making wills are capable of becoming executors,- and indeed the favor of the law *1018 extends even further in this respect.” 18 Cyc. 77.
“But though the courts are invested with considerable discretion as to refusing to qualify persons named as executors, for reasons set forth in the various statutes, they are not at liberty to invent new causes of disqualification, or to add to those prescribed by statute, or to refuse to qualify an executor who is not within any of the classes declared incompetent by statute.” Ib. 79.
In Succession of Townsend, 36 La. Ann. 537, it was held that, as the person named by the testatrix was in prison, charged with her murder, he was incapable of discharging the duties of executor, and that the case fell under the provision of the act of 1877, which, as we have seen, declares that:
“In all testate successions in the parish of Orleans, where, from any cause, the executor cannot discharge the duties of his office, the judge shall appoint the public administrator,” .etc.
In this case, and in the cases which are here invoked as precedents, the appointments made by the testators have been declared inoperative, not because of any supposed incapacity in the executors, but because the heirs and legatees of the testators have considered the appointments unnecessary, and the courts have sustained their contentions. Our investigation has, however, led to the conclusion that the question of the necessity or propriety of malting such an appointment in any given case is left to the testator, and that, in so far as that question is concerned, neither his action nor his motive is subject to review, by the heirs, legal or testamentary, or the courts.
It may be that the testator, feeling that he is about to be called hence, and that he must leave an extensive estate and business and a widow and minor children or major children, none of whom are competent to handle such estate during the period of transition that must follow his death, appoints his trusted agent and friend, who is already •familiar with his affairs, in order that they .may be settled in the manner most creditable to his memory and most advantageous to his widow and heirs. It may be, as appears to have been the case in Dupuy’s Succession, that intending to leave his entire estate to one who' is in a distant country, and of whose existence he is uncertain, he deems it advisable to appoint an executor who will administer the estate until, the fact of such existence being ascertained, it can be deliyered to the universal legatee or, in his default, to those who then become entitled to it. It may be that he has no other motive than to enable the person whom he names to acquire the commission to which he will become entitled. But, though the law authorizes an inquiry into the motive of the testator in disposing of his estate, and limits his power in that respect, it confers no such authority, and imposes no such limitation, in the matter of the appointment of his executor, and he may appoint as executor, with full seisin, a person to whom he can leave none, or but a small proportion, of his estate. In Dupuy’s Succession it appears that it was the wish and purpose of the testator that his brother should receive his entire estate, save so much as might become due, as executor’s commission, to one whom we assume to have been appointed his executor because he was his friend. It does not appear that he intended that his heirs at law, other than his brother, should receive anything; and whilst, by reason of the death of the brother, before that of the testator, they took the estate, we can discover no sufficient reason why, merely at their instance, the wishes of the testator, with regard to his executor, should also have been defeated. It is said, in the opinion, that:
“The functions of a testamentary executor are a mandate, differing from other mandates in this only: That it begins at the death of the principal, when all other mandates end.”
Conceding that to be the case, a mandate, under our law, is not necessarily gratuitous, *1020 and may “take place * * * for the interest of the person granting it alone, for the joint interest of both parties, for the interest of a third person, for the interest of such third person and that of the party granting it, and finally for the interest of the mandatary and a third person.” C. C. art. 2986. The contract is completed only by the acceptance of the mandatary (C. C. art. 2988); and whilst it is presumed that the mandatary is to render the service gratuitously, until the contrary appears, it is well settled that the question whether that was the intention may be determined by circumstance; and, in the case of an executor, the law entitling him to a commission is read into the contract.
In Hale, Executrix, v. Salter et al., 25 La. Ann. 320, it appeared that Richard Salter appointed Thomas Hale and Peter Marcy executors of his last will and detainers of his estate; that, after his death, his will was admitted to probate, whereupon they presented a petition to the court praying that an inventory be made and that they be allowed to qualify; that the inventory was ordered, and that Hale took the usual oath; that, before the inventory was begun, the heirs of Salter, who were all of age, brought suit, alleging that they were willing to pay the debts and the only legacy contained in the will, and that an administration was unnecessary, and praying that they be put in possession. Hale and Marcy answered that they had no objection, and submitted the matter to the court; and the heirs were put in possession. Thereafter Hale died, and his widow and executrix brought suit for the whole of the executor’s commission, alleging that her husband, alone, had taken the oath. The heirs excepted on various grounds, and on the merits contended that, as Hale had not administered, he was entitled to no commission. This court held to the contrary, and, among other things, said;
“A testator has the right to give the seisin of his estate to his executor. The acceptance of this trust creates obligations on the part of the executor, for discharging which he is allowed compensation by law. His obligations are to carry out the provisions of the will, to take-charge of the property of which the seisin gives him possession, and, after the performance of these duties, to deliver the succession over to the heirs. His compensation for the performance of these obligations is 2% per cent, on the estimated value of the property belonging to the succession thus placed in his possession. The moment he accepts the trust, his obligation and responsibilities begin; the moment his obligations and responsibilities begin, his right to compensation attaches, and remains until discharged, and this without reference to the time the succession was in his hands. The heirs can at any time take the seisin from the testamentary executor, on offering him a sufficient sum to pay the movable legacies. C. C. art. 1661. They may at any time accept the succession which has fallen to them and be put in possession thereof upon complying with the requirements of the law, but they cannot do this without discharging the obligation due to the executor. . The fact that the executor is-willing to give up his trust immediately to the rightful heirs without forcing them to a litigation, and without entailing upon the succession the necessary costs of a tedious administration, is rather a reason why the executor’s fees allowed by law should be paid without hesitation than an excuse for not paying them at all. Be this as it may, the law gives "to the executor a compensation for his services and responsibilities, and the heirs cannot deprive him of it by causing themselves to be put in possession, after the executor has accepted the trust. * * * The heirs contend that they cannot be called upon to pay, because the law provides that the executors’ commissions are based upon an inventory, and that, as no inventory was taken, there are no means by which the amount due them can be ascertained. We think the heirs cannot, by their own act, prevent the executors from taking an inventory, and then refuse' them their commission, because the inventory was not taken. * * • The word ‘qualify,’ in its legal use, means to take an oath to discharge the' duties of an office, and when an executor named in a will alleges that he desires to qualify as such, and the court orders that letters testamentary issue to him upon his complying with the requisites of the law, we understand that they are to be issued to him when he shall have taken the oath well and faithfully to discharge the duties of his trust.”
In Succession of Hopkins, 33 La. Ann. 1166, the executor filed an account, charging a commission on the appraisement as-shown by the inventory, which was opposed, *1022 on the ground that there having been a compromise and settlement, by notarial act, between the particular and universal legatees, and the executor not having taken possession or performed any acts of administration, no commissions were due; and the district court sustained that contention. But this court said:
“The judgment of the lower court, in this regard, is erroneous. The executor, duly constituted such by the express terms of the will, took the prescribed oath of office, and thereby assumed the functions of his office and became responsible for their faithful discharge and performance. If he had been derelict in duty, if through his misfeasance or malfeasance the estate had been squandered or diminished, either by himself or those to whom he intrusted it, or whom he permitted to enjoy or use it, there can be no question as to his liability to the parties who might be injured. It matters not that the legatees or heirs chose, by consent and agreement among themselves, to make a distribution of the assets of the succession; this cannot be allowed to deprive the executor of the fees and commissions fixed by law. The oral declarations of the testatrix in regard to her alleged wish that the executor should resign his trust cannot prevail over the solemn terms of the will itself any more than oral suggestions or declarations in regard to the legacies, particular and universal, could have authorized or justified the executor to refuse the recognition or payment of the legacies made in the will itself. There is not the slightest foundation for the opposition, either in law, reason, or justice. C. C. 1683; [Succession of Hale] 26 La. Ann. 195; [Hale v. Salter] 25 La. Ann. 323; [Robouam v. Robouam] 12 La. 73; [Smith v. Cheney] 1 Rob. 98. In this ease the executor, under the will, had full seisin of the estate, and is entitled to 2% per cent, commissions on the value, as determined in the inventory.”
In Succession of Charmbury, 34 La. Ann. 21, the question was whether, in the absence of all objection from creditors or'legatees, the heirs were entitled to be put in possession, after due demand, in accordance with C. P. art. 1000 et seq., on the executors. The court held that they were. In Succession of Baumgarden, 35 La. Ann. 127, it was held (quoting from syllabus):
“In a succession where the deceased has left heirs of age and a minor heir, and in which he left a will, making special legacies of movable and immovable property, and appointed testamentary executors, the heirs of age cannot dispossess the executors, before an inventory is completed, and a tutor is legally qualified for the minor heir, and thus avoid an administration. In such a case, the distribution of the legacies is an act of administration which must be performed, as indicated in the will, by the testamentary executors, and an administration therefore becomes necessary.”
It is said in Succession of Dupuy that:
“It is well settled that the seisin of the executor is a fiction of law, which does not interfere with the legal possession of the heir.”
But in Bird v. Jones, 5 La. Ann. 645, decided by the same court, Justice Slidell, as the organ of the court said:
“To enable the executor to fulfill the trust, the seisin was expressly given him. * * * It is obvious, from the language of our Code and other legislation, that the actual seisin of an executor is something distinct from and paramount to the fictitious seisin, which, it is said, is vested in the heir immediately upon the death of the ancestor.”
Much confusion has arisen from these conflicting expressions, and as the idea that the seisin of the heir is paramount to that of the executor appears to be the basis of the dicta that, where, there are no debts to pay and no legacies to deliver, the executor can have no function to discharge, it becomes necessary or advisable to inquire into the matter.
The Civil Code declares (article 940) that the heir is called to the inheritance immediately upon the death of the person whom he succeeds. That (article 942) “being considered” seised of the succession, the right of possession continues in him, “independent of the fact of possession.” Article 946, however, declares that:
“Though the succession be acquired by the heir from the moment of the death of the deceased, his right is in suspense, until he decides whether he accepts or rejects it.”
So that in no case, save where the succession falls to a minor, for whom the law accepts, does the heir succeed immediately upon the death of the de cujus. Apart from that, there are other articles of the Code which confer upon the person, to whose estate, if *1024 there be any after the payment of debts, the heir is to succeed, the right to control the seisin ad interim, as well as the ultimate disposition of the same, to wit:
“Art. 1659. The testator may give his testamentary executor the seisin of the whole of his succession, or only of a Certain determinate proportion, according as he has expressed himself. * * * If the testator has not granted the seisin to the testamentary executor, the latter cannot require it.
“Art. 1660. * * * But if the executor testamentary be merely appointed testamentary executor, without any other power, his functions are confined to see (sic) to the execution of the legacies contained in the will, and to cause the inventory and other conservatory acts of the property of the succession to be made.”
“Art. 1668. In default of funds sufficient to discharge the debts and legacies of sums of money, the testamentary executor shall cause himself to be authorized by the court to sell the movables and, if they be insufficient, the immovables to a sufficient amount to satisfy those debts and legacies.”
“Art. 1671. The heirs can, at any time, take the seisin from the testamentary executor, on offering him a sum sufficient to pay the movables legacies and on complying with the requirements of article 1012 (i. e., that he shall give bond for the security of property or money which he takes into his possession and with respect to which there are claims pending in court).
“Art. 1672. The testamentary executor is bound, even after the expiration of his seisin, to see the testament faithfully executed.
“Art. 1673. Executors shall continue in office until the estate shall be finally wound up. * * * ”
[4] It is evident from the foregoing, and from other provisions to which we consider it unnecessary to make.special reference, that the executor, by virtue of the seisin and authority conferred upon him, is not only authorized, but is obliged, to pay the debts of the succession and the movable legacies from the funds on hand, but he can pay out only money which has come into his possession; hence the funds on hand (meaning the funds which the testator has left in bank or elsewhere) are, in contemplation of law, in the possession of the executor, and not of the heir. If there are no funds on hand, the executor is not only authorized, but is obliged, to cause the property of the succession tó be sold, in order to pay the debts and moneyed legacies, and he must deliver such property to the purchasers; and in so doing he may dispossess the heir of the house in which he was born and has lived all his life, and this notwithstanding that the heir is “considered seised” of the succession. The office and seisin of the executor enable him, therefore, to dispose of the title and to control the possession of all the property of the succession, and the title and seisin of the heirs are among the rights that may be thus disposed of and controlled. Those rights must yield to the paramount authority and rights of the executor; and the only way in which the heir can resist the executor is, not by relying on his own title and seisin, but by taking away from the executor the seisin which the testator and the law have conferred upon him, a privilege which the heir may. exercise, on complying with the conditions imposed by articles 1671 and 1012 of the Civil Code. And, as finally conclusive of the question, it is clear that, if the seisin of the succession which is “considered” to have devolved upon the heir, from the moment of the opening of the succession, were paramount to that of the executor, the heir would be under no necessity to offer the executor money for the payment of movable legacies and to give bond for the security of claims in court, in acquiring such seisin from him. We conclude, therefore, that the dictum in the opinion in Succession of Dupuy, to the effect that “the seisin of the executor is a fiction of law which does not interfere with the legal possession of the heir,” is misleading, and that the law is correctly interpreted in the opinion in Bird v. Succession of Jones, in the statement that;
“The actual seisin of an executor is something distinct from and paramount to the fictitious seisin, which, it is said, is vested in the heir immediately upon the death of the ancestor.”
And, if it be true that the executor, with seisin, of the entire estate, is, in contempla *1026 tion of law, the actual possessor of the entire estate, it is equally true that he must ultimately account for the entire estate to those who may be entitled, to such accounting, and hence that his possession must be divested in some legal way. In other words, if, after discharging the debts and movable legacies, there is a residuum falling to the heirs, his obligation to deliver that residuum to them, and to no one else, is inherent in the situation, is just as imperative as any duty or obligation specifically imposed upon him by the will, and continues, not only during the term of his executorship and seisin, as fixed by law, but until discharged. It is not true, therefore, that the sole duty of an executor, to whom the seisin of an estate has been given, is to pay the debts and deliver the legacies; but, on the other hand, those duties, so far as values are concerned, may be and often are of less importance than the duty of delivering the balance or universality of the estate to the heirs, who, in such cases, must “present a petition to the judge who appointed or confirmed these curators or executors, praying that they be cited and compelled to account for their administration.” C. P. art. 1000. In Babin v. D’Astugue, 7 Mart. (N. S.) 619 (being a case in which, after the term and seisin of the executor had expired, a person presented himself and demanded the estate), this court said:
“The executors are not permitted to give up the estate to any person but the heir, and there is nothing in the law which would authorize us to say that the opinion of the,attorney for the absent heirs can control their opinion as to the capacity of the person presenting himself as such.”
In Sterlin’s Executor v. Gros, 5 La. 106, 107, it was said in effect of a natural-child who was claiming, not in that capacity, but as legatee, under a universal title, that she should proceed against the executors or, in ease of their neglect to act, against a dative executor.
In State v. Judge, etc., 4 Rob. 42, it was held that one who claims to be put in possession as universal legatee must do so contradictorily with the executor or with a dative executor, to be appointed.
In Caldwell v. Glenn, 6 Rob. 9, and Succession of Lorenz, 41 La. Ann. 1091, 6 South. 886, 7 L. R. A. 265, there were similar rulings.
In Succession of Fletcher, 11 La. Ann. 59, it was held that natural children are called to the succession of their father, who has acknowledged them, when he has left neither ascendants, descendants, collaterals, nor widow, and that they do not succeed at the moment of the death, but have only a right of action to be put in possession.
In Succession of Barber, 52 La. Ann. 960, 27 South. 363, it was held that, a widow being an irregular heir of her husband, an ex parte judgment putting her in possession of his estate was a nullity.
Whether or not, therefore, the debts of this succession were of such a character as to have required the appointment of an administrator, if there had been no will, we are of opinion that the executor, appointed by the testator, was entitled to be confirmed by the court; and, as the principle upon which that conclusion rests is inconsistent with that which underlies the decision in the cases of Succession of Dupuy and Succession of Walker, supra, those decisions may be regarded as overruled.
’ It is accordingly ordered and decreed that the judgment herein appealed from, maintaining the oppositions of Mrs. Marie Serres Bordes and Mrs. Barbara Cook Serres to the application of John B. Hall to be confirmed as testamentary executor and dismissing said application, be avoided and reversed; that there now be judgment confirming said John B. Hall as testamentary executor of the last will of Jean Serres, deceased; and that this case be remanded, with instructions *1028 to the trial court to issue letters testamentary as prayed for by him. It is further decreed that the costs of said oppositions and of this appeal be paid by said Mrs. Marie Serres Bordes and Mrs. Barbara Cook Serres.
O’NIELL, J., takes no part.